UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANK A. ZAYAS, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. |
| | : | 3:11-cv-442 (VLB) |
| THE CARING COMMUNITY OF | : | |
| CONNECTICUT, | : | OCTOBER 1, 2012 |
|     Defendant, | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. #28]**

Before the Court is a motion for summary judgment filed by the Defendant, The Caring Community of Connecticut ( "Caring Community"). The Plaintiff, Frank A. Zayas ("Zayas"), brought this suit in Connecticut Superior Court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a) *et seq*. Plaintiff alleges that Defendant terminated his employment on the basis of his race and created a hostile work environment. For the reasons stated hereafter, Defendant's motion for summary judgment is GRANTED.

**Procedural Background**

The Defendant removed the case to this Court and then moved to dismiss counts two, three and four of the complaint alleging breach of implied covenant of good faith and fair dealing, negligent infliction of emotional distress and intentional infliction of emotional distress, respectively, for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6).  See [Dkt. #17].  In response, the Plaintiff requested and was granted leave to amend his complaint to withdraw counts two, three and four. [Dkt. ##18-20].  On November 9, 2011, the Plaintiff filed an amended complaint alleging solely violations of Title VII and CFEPA.  See [Dkt. #21].

On May 1, 2012, the Defendant filed its motion for summary judgment. [Dkt. #28]. To date the Plaintiff has failed to respond to Defendant's motion. On July 11, 2012, Defendant filed a motion to accept the facts set forth in it's Local Rule 56(a)(1) Statement as undisputed and to grant summary judgment in light of Plaintiff's failure to respond to the motion for summary judgment.  See [Dkt. #31]. Plaintiff has failed to respond to the Defendant's motion to accept the facts set forth in the Local Rule 56(a)(1) Statement.  As a result of Plaintiff's failure to file a response, the Court deems the assertions made in Defendant's Local Rule 56(a)(1) statement as true and admitted. Accordingly, the Court grants Defendant's motion to accept those facts as true.  *LeSane v. Hall's Security Analyst, Inc.*, 239 F.3d 206, 210-211 (2d Cir. 2001) (holding where plaintiff had failed to respond to summary judgment motion, the Court should deem the assertions made in defendant's Rule 56 statement as admitted and then rule on the merits of the summary judgment motion.); *U.S. v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976).

### Factual Background

The Defendant's 56(a)(1) statement which the Court deems admitted, sets forth the following relevant facts.  The Caring Community of Connecticut is a non-

stock corporation that operates residential programs for individuals with developmental disabilities in the State of Connecticut. [Dkt. #30, Def. Local Rule 56(a)(1) Statement, ¶1]. On August 22, 2003, Zayas was hired as a Developmental Disabilities Trainee. *Id.* at ¶2. After one year, he was promoted to Community Living Specialist ("CLS"). *Id.* On February 5, 2006, Zayas was promoted to the position of Senior CLS for the Anes House, one of Caring Community's community living arrangement homes. *Id.* at ¶4. Zayas received several raises during the course of his employment, the last one on July 1, 2007. *Id.* at ¶5. Zayas was aware and familiar with Caring Community's personnel policies and procedures. *Id.* at ¶¶5-8. Zayas was an at-will employee. *Id.* at ¶31.

On December 16, 2008, Rhonda Drew, a Residential Coordinator, received a written communication from Kristin Jutila, CLS III, dated December 15, 2008, raising serious concerns about Zayas' conduct on the job. *Id.* at ¶9. The communication was passed on to the CEO and President of Caring Community, Wesley Martins; the Deputy Director, Daisy Nayeem; the Associate Director, Glenn Meadows, II; and the Director of Residential Services, Jason Hubbard. *Id.* at ¶10.

Senior management suspended Zayas on December 17, 2008 and conducted an investigation amongst senior staff members at the Anes House concerning the concerns raised by Jutila. *Id.* at ¶¶11-12. Senior management conducted interviews and took statements from Zayas's co-workers. *Id.* at ¶13. A summary of management's findings and conclusions was submitted to Martins. *Id.* at ¶14. Management concluded that Zayas had abused his authority and

intimidated staff, that he possessed a gun while on duty on agency property and at a state facility, and inappropriately used consumer funds. *Id.* at ¶15. Specifically, Management concluded that Zayas had intimidated his subordinate staff by having his gun prominently on the agency premises. *Id.* at ¶¶19. Management also noted that Zayas on one occasion had inappropriately initiated an argument with a co-worker. *Id.* at ¶20. Lastly, Management concluded that Zayas misused consumer funds by purchasing Chinese food with those funds. Zayas would split four meals between six consumers and take the remaining meals home with him. *Id.* at ¶21. In conclusion, management concluded that Zayas violated Caring Community's personnel policies and procedures concerning guidance and discipline regarding "theft or misuse of consumer or agency property or possessions" and by "purposely engaging in conduct or activities that adversely impacts on staff morale." *Id.* at ¶23.

On December 18, 2008, Zayas was informed that, based upon Caring Community's investigation, his employment was being terminated because he misused his authority and intimidated subordinate staff, possessed a gun on agency property and at a state facility while on duty, and inappropriately used consumer funds. *Id.* at ¶25.

At no time during his employment, did Zayas notify, or report or complain to anyone that he had been discriminated against or otherwise mistreated by anyone at Caring Community. *Id.* at ¶29. Zayas acknowledged and agreed that he had not been discriminated against by anyone in Management, including Wesley Martins, Daisy Nayeem, Glenn Meadows, II and Jason Hubbard. *Id.* at ¶30.

**Legal Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and

citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

<u>Analysis</u>

I.    Title VII Employment Discrimination Claim

Plaintiff alleges that Defendant discriminated against him on the basis of his race and national origin as a Hispanic individual from Puerto Rico. Under Title VII, Plaintiff's claims of discriminatory treatment are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* standard requires that Plaintiff establish a *prima facie* case of discrimination by showing that (1) he is part of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action and (4) that the circumstances surrounding the employment action give rise to an inference of discrimination. *Id.* The Second Circuit has noted that the burden to establish a *prima facie* case is "minimal" or "de minimis." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

If Plaintiff can establish a *prima facie* case, the burden shifts to the Defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell*, 411 U.S. at 802. As this stage, Defendants need

only proffer, not prove, the existence of a nondiscriminatory reason for their employment decision. *See Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (internal quotations omitted).

If Defendant meets its burden of production, the burden shifts back to Plaintiff to show that the legitimate, nondiscriminatory reason offered by the Defendant is mere pretext for illegal employment discrimination. *McDonnell*, 411 U.S. at 804. "Although the intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Here, Plaintiff has failed to establish a prima facie case of discrimination. Although it appears undisputed that Plaintiff was part of a protected class, that he was qualified for his position considering he received several raises the last one on July 1, 2007, and that he suffered an adverse employment action when he was terminated from his employment, there is no evidence in the record that the circumstances surrounding his termination give rise to an inference of discrimination. The Court notes that Plaintiff's unverified amended complaint, which cannot support a motion in opposition to summary judgment, only conclusorily alleged that Caring Community discriminated against him on the basis of his race, ethnicity and national origin. See [Dkt. #21, Amended Compl., ¶¶8-10, 13]. *See Continental Ins. Co. v. Altantic Cas. Ins. Co.*, No.07Civ.3635(DC),

2009 WL 1564144, at *1 n.1 (S.D.N.Y. June 4, 2009) ("On a motion for summary judgment, however, allegations in an unverified complaint cannot be considered as evidence.") (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).  In his amended complaint, Zayas failed to allege any specific factual content which would plausibly state a claim for discrimination based on race to survive a Rule 12(b)(6) challenge.  Since Plaintiff failed to oppose the motion for summary judgment and submit any evidence to the Court, there is consequently no evidence in the record that Caring Community's conduct was motivated in any part as a result of racial animus.  See *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

Defendant notes in its memorandum of law in support of its motion for summary judgment that Zayas testified in his deposition that his subordinate co-workers made fun of his speech and that one co-worker, Debbie Dziengeiel, made fun of the people of Puerto Rico.  [Dkt. #29, Mem. in support of Summary Judgment, p. 16].  However, Defendant points out that Zayas was unable to offer one example of a supervisor or member of management demonstrating any discriminatory animus and that Zayas never complained to his supervisors of anyone discriminating or mistreating him.  *Id.*   Defendant appropriately argues that the alleged comments of Zayas's co-workers should be considered stray remarks not probative of discriminatory motivation.

"Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Silver v. N. Shore Univ. Hops.*, 490 F.Supp.2d 354, 362 (S.D.N.Y. 2007). "Often, however, an employer will argue that a purportedly discriminatory comment is a mere 'stray remark' that does not constitute evidence of discrimination." *Id.* "Although courts have often used the term 'stray remark' to refer to comments that do not evince a discriminatory motive, the Second Circuit has found that the term 'stray remark' 'represented an attempt-perhaps by oversimplified generalization-to explain that the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.'" *Galimore v. City University of New York Bronx Community College*, 641 F.Supp.2d 269, 284 (S.D.N.Y. 2009) (quoting *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)). "Accordingly, the task is not to categorize remarks 'either as stray or not stray,' and 'disregard [remarks] if they fall into the stray category,' but rather to assess the remarks' 'tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class.'" *Id.* (citation omitted).

Courts have found the following factors relevant to such a determination: "(1) who made the remark, *i.e.,* a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.,* whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made,

*i.e.,* whether it was related to the decision nmaking process." *Silver*, 490 F.Supp.2d at 363 (citations omitted). Here, Zayas has failed to demonstrate any discernible nexus between the comments and the Defendant's decision to terminate him. *Howe v. Town of Hempstead*, No.05CIV0656, 2006 WL 3095819, at *7 (E.D.N.Y. Oct. 30, 2006) ("Racist comments may constitute evidence of an intent to discriminate, but only if a sufficient nexus exists between the comments and the adverse employment action. This connection exists if the comments were made by the decision-maker or by someone who had great influence over the decision-maker.") (citation omitted); *see also Campbell v. Alliance Nat'l Inc.*, 107 F.Supp.2d 234, 247 (S.D.N.Y. 2000) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.") (Internal quotation marks and citation omitted). Here, Zayas admits that the comments were made by low-level co-workers not the decision-makers. There is no evidence that the decision-makers were aware of, much less affected by the comments as Zayas admits he never complained about them. Thus, the remarks were not made in relation to the employment decision at issue. Therefore these comments were remote and oblique and not a motivating factor in Senior Management's decision to terminate Zayas. Consequently, these comments do not constitute evidence of discriminatory motivation.

Lastly, Defendant has proffered a nondiscriminatory reason for its employment decision. Defendant has submitted evidence that it terminated Zayas due to its conclusion that Zayas violated its personnel policies by

misusing his authority, intimidating subordinate staff by having his gun on agency property and inappropriately using consumer funds. As Plaintiff has failed to respond to the motion for summary judgment, Plaintiff has failed to offer any evidence demonstrating that Defendant's nondiscriminatory reason was a mere pretext for illegal employment discrimination. As noted above, Plaintiff's unverified complaint is entirely conclusory and Plaintiff's testimony that his co-workers made fun of his speech and one co-worker made fun of people from Puerto Rico is not probative of discriminatory motivation. Consequently, no reasonable jury based on the facts submitted by the Defendant, which this Court deems to be admitted, could conclude that Defendant's nondiscriminatory reason for terminating Zayas was a pretext for unlawful termination. The Court therefore grants Defendant's motion for summary judgment as to Zayas's Title VII employment discrimination claim.

VII Hostile Work Environment Claim

Zayas conclusorily alleges in his unverified amended complaint that his co-workers created a racially hostile work environment for Hispanic employees. [Dkt. #21, Amended Compl., ¶9]. Under Title VII, it is unlawful for an employer to subject individuals to a discriminatorily hostile or abusive work environment. *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993); 42 U.S.C. § 2000e–2(a)(1). To prove that a workplace is actionably "hostile" under Title VII, a plaintiff must demonstrate that: (1) he "subjectively perceive[d] the environment to be abusive;" (2) the conduct was so "severe or pervasive" that it created an "objectively hostile or abusive work environment", meaning "an environment that

a reasonable person would find hostile or abusive;" and (3) the conduct created an environment abusive to employees "because of their race, gender, religion or national origin." *Harris*, 510 U.S. at 21–22.

The Supreme Court has established a non-exhaustive list of factors relevant to determining whether a workplace is so severely or pervasively hostile as to support a Title VII claim. These include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether the conduct unreasonably interfered with plaintiff's work; ... whether it unreasonably interferes with the employee's work performance[;]" and "[t]he effect on the employee's psychological well-being[.]" *Id.* at 23.

To determine "whether an environment may be considered sufficiently hostile or abusive to support [a Title VII claim]," courts must consider "the totality of the circumstances." *Williams v. Westchester,* 171 F.3d 98, 100 (2d Cir.1999) (citing *Harris,* 510 U.S. at 23). The factors outlined above must be evaluated "cumulatively" so that the Court can "obtain a realistic view of the work environment." *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997) (citations omitted). This includes evaluating the "quantity, frequency, and severity" of the discriminatory incidents. *Id.* "In order to meet [his] burden, the plaintiff must show more than a few isolated incidents of racial enmity[.]" *Williams*, 171 F.3d at 100. Instead, the plaintiff "must establish that his workplace was permeated with instances of racially discriminatory conduct such as 'discriminatory intimidation, ridicule, and insult,' such that 'the environment

would reasonably be perceived, and is perceived, as hostile or abusive.' *Id.* (citations omitted).

Zayas alleges in his unverified amended complaint that his coworkers made false statements that he brought his gun to work, sold drugs, stole Chinese food, stole a camera and computer tower, associated with drug dealers, owned too many clothes, owned numerous vehicles, and "other sordid complaints of this nature." [Dkt. #21, Amended Compl.,¶11]. As noted above, allegations in an unverified complaint cannot be considered evidence on a motion for summary judgment. Consequently, Zayas has failed to submit any evidence demonstrating the creation of a hostile work environment.

Even assuming that Zayas had submitted admissible evidence that his co-worker made these false accusations and remarks, a reasonable juror would not conclude based on the content and context of these "accusations" that his co-workers were motivated by racial animus. Consequently, Zayas has failed to demonstrate that this conduct created an environment abusive to employees because of their race or national origin. *Harris*, 510 U.S. at 21–22. A reasonable juror would not view Zayas's co-workers allegedly false accusations that he stole food and electronics, sold drugs, and brought a gun to work as reflective of racial animus.

Moreover, Zayas has failed to demonstrate that this alleged conduct was sufficiently continuous and concerted to have altered the conditions of his work environment to maintain a claim for hostile work environment. Zayas worked at Caring Community for over five years and he has alleged that 13 false

accusations had been made over those five years. Courts in the Second Circuit have found that "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir, 2001) (internal quotations and citations omitted); *see also Rios v. Buffalo and Fort Erie Public Bridge Authority*, No.04-cv-375A, 2008 WL 657121, at *3 (W.D.N.Y. March 7, 2008) (finding that behavior complained of was "simply too infrequent and episodic to constitute a hostile work environment" where plaintiff identified "only about six specific instances of misconduct over a thirteen-year period of time"); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001) (holding that eight incidents of racial harassment over a twenty-five month period were not sufficiently severe or pervasive to create a hostile work environment); *see also Thomas v. iStar Financial, Inc.,* 438 F. Supp. 2d 348, 363 (S.D.N.Y. 2006) (noting that the Court need not consider "unsubstantiated allegations" that a supervisor targeted black employees for criticism and concluding that even if all the incidents had occurred, they were nothing more than isolated incidents.). Even assuming that the statements and criticisms about which Zayas complains occurred, they were not physically threatening. They were small in number and infrequent, comprised of only 13 remarks over five years. They were not severe as evidenced by the fact that Zayas never complained about them; and, they neither interfered with his ability to perform his job nor affected his psychological well-being. Accordingly, while Zayas no doubt subjectively perceived the environment to have been abusive towards Hispanics, the conduct was not so

severe or pervasive as to constitute an objectively hostile or abusive work environment. Accordingly, the Court grants Defendant's motion for summary judgment as to Zayas's Title VII hostile work environment claim.

## II.     CFEPA Claims

Zayas alleges that he faced discrimination and a hostile work environment based upon his race and ethnicity in violation of CFEPA. The standards governing discrimination and hostile work environment under CFEPA are the same as those governing Title VII. *See Craine v. Trinity College*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."); *State v. Commission on Human Rights and Opportunities,* 211 Conn. 464, 470 (1989) (The intent of the Connecticut legislature in adopting the CFEPA was to make the statute coextensive with Title VII; therefore, Connecticut courts look to federal case law for guidance in interpreting that provision of the CFEPA); *Brittell v. Dep't of Correction,* 247 Conn. 148, 165-168 (1998) (the standards governing a hostile work environment claim under the CFEPA are the same as those governing a claim under Title VII). Therefore the foregoing analysis regarding Zayas's Title VII claims applies to his corresponding CFEPA claims and accordingly the Court likewise grants summary judgment on Zayas's discrimination claims under CFEPA.

## Conclusion

For the foregoing reasons, the Court GRANTS Defendant's [Dkt. #28] motion for summary judgment. The Clerk is directed to enter judgment in favor of Defendant and close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 1, 2012